ALASKA PACKERS' ASS'N v. PACIFIC STEAM WHALING CO. et al.

(Circuit Court, N. D. California. March 16, 1899.)

No. 12,721.

1. PATENTS—INFRINGEMENT—REPAIR AND RECONSTRUCTION.
    The purchaser of a patented machine may repair the same by replacing worn-out parts which, in their relation to the whole structure, are temporary in their nature, so long as the identity of the machine is not destroyed, though such parts may be among the novel or valuable features covered by the claims. But this right to repair does not include the right to reconstruct or rebuild the machine.

2. SAME—PRELIMINARY INJUNCTION.
    A preliminary injunction will not be granted to prevent the replacing of a part of the patented machine which wears out very quickly, though such part is one of the elements specially protected by the patent.

3. SAME—CAN-FILLING MACHINES.
    The Jensen patent, No. 281,767, for an improved can-filling machine, held infringed, on motion for preliminary injunction.

J. H. Miller, for complainant.
M. A. Wheaton and I. M. Kalloch, for defendants.

MORROW, Circuit Judge (orally). This is an application for a provisional injunction to restrain the defendants from infringing letters patent of the United States numbered 281,767, for an improved can-filling machine. The complainant is a California corporation, having its principal place of business in the city and county of San Francisco, and engaged, in the territory of Alaska and at other places, in the business of packing salmon, in hermetically sealed cans. The defendant Pacific Steam Whaling Company is also a corporation organized under the laws of the state of California, and engaged in the same business as complainant, while the business of the defendant F. A. Robbins Press Works, a corporation of the same state, is that of repairing machinery. The patent in controversy is now owned by complainant, by virtue of various assignments forming a chain of title from the patentee, Mathias Jensen, to whom letters patent of the United States, No. 281,767, were issued on July 24, 1883, for a can-filling machine. It is a complicated mechanism of steel, iron, and brass, composed of a receiving hopper, semicylindrical rotary back, with forks, knives, measuring chamber, spout, plunger, reciprocating plate, etc., and operated by a shaft and various arms, levers, rollers, and cams, and intervening con-

necting devices.    It appears from the affidavits on behalf of the defendants in this case that the Pacific Steam Whaling Company for the past nine years has been engaged in the business of packing salmon in the territory of Alaska, and is the owner and operator of five different canneries for canning and packing salmon in said territory; that these canneries are situated in different places in Alaska, many hundreds of miles apart, and without any direct or regular means of communication between them; that at different times since the defendant Pacific Steam Whaling Company has been engaged in the salmon-packing business, commencing with the year 1889, it has purchased six of the Jensen can-filling machines, and is now the owner of all of the six machines so purchased; that each and every one of these machines was sold to defendant by the owners of the Jensen patent, or by their licensees; that, before the commencement of the season of each year, the defendant Pacific Steam Whaling Company has brought its can-filling machines to San Francisco, and delivered them to the F. A. Robbins Press Works for repair.    It is claimed by the defendant Pacific Steam Whaling Company that such repairs have been only those ordinarily required to keep the machines in good working order, and, with a single exception, the repairs did not include the rebuilding of any of the patented parts of the machines; that, with respect to one of the machines, the defendant desired to have certain parts built heavier and stronger than they had previously been, and accordingly the F. A. Robbins Press Works so rebuilt and reconstructed the machine that it is admittedly now a practically new machine; and that this rebuilt machine, together with the others that have been repaired, the defendant is about to ship to its canneries in Alaska. Complainant asks that defendants be restrained from making, using, selling, transferring, or delivering to any person whatever any such can-filling machines, or any parts thereof, and from counterfeiting or imitating said machines; also, from sending or shipping or transporting to the territory of Alaska, or to any other place whatever, from the city and county of San Francisco, those certain Jensen can-filling machines referred to in the affidavits, or any of the parts thereof, now in the possession of the F. A. Robbins Press Works, or the defendant Pacific Steam Whaling Company.    The repaired machines are designated as Nos. 69, 70, and 108.    The rebuilt machine is without a number. It is claimed on behalf of the complainant that the repairs of the three numbered machines have extended to such parts as are specifically covered by the claims of the patent.

My view of the questions now before the court is that the well-known principles governing the issuance of injunctions pendente lite are applicable to a case of this character.    The granting of the injunction rests in the sound discretion of the court.    But the court is not called upon to determine the merits of the case upon this application. As stated in paragraph 5 of High on Injunction:

"It is to be constantly borne in mind that, in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved.    They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue in statu quo, until a hearing upon the merits, without

expressing, and, indeed, without having the means of forming, a final opinion as to such rights. And, in order to sustain an injunction for the protection of property pendente lite, it is not necessary to decide in favor of plaintiff upon the merits; nor is it necessary that he should present such a case as will certainly entitle him to a decree upon the final hearing, since he may be entitled to an interlocutory injunction, although his right to the relief prayed may ultimately fail."

It will not be necessary, therefore, to determine upon this hearing the final question of an infringement. But the general principles of the law governing the subject of repairing and reconstructing patented machines will materially aid the court in determining the present application. The purchaser of a patented machine may repair the machine which he has purchased, by replacing worn-out parts, so long as the identity of the machine is not destroyed. Wilson v. Simpson, 9 How. 109; Gottfried v. Brewing Co., 8 Fed. 322; Young v. Foerster, 37 Fed. 203; Shickle, Harrison & Howard Iron Co. v. St. Louis Car-Coupler Co., 23 C. C. A. 433, 77 Fed. 739. The sale of an entire machine carries with it the right to replace a part which, in its relation to the whole structure, is temporary in its nature, although such part may be one of the novel or valuable devices covered by the claims of the patent. Farrington v. Board, 4 Fish. Pat. Cas. 216, Fed. Cas. No. 4,687. But the right to repair does not include the right to build a new machine, or to reconstruct or rebuild an old one. Mitchell v. Hawley, 16 Wall. 544.

In the case of Singer Mfg. Co. v. Springfield Foundry Co., 34 Fed. 393, the action was for an infringement of several claims of three different patents for improvements in sewing machines. The sewing machine of the complainant was not patented as an entirety, but different parts of the machine were covered by different patents. The claims of one of these patents covered an improved shuttle driver, and the defendant made and sold this device to be used in the complainant's machine. The claim of another patent was for a shuttle race for an oscillating shuttle. The defendant made this shuttle race for use in the complainant's machine. There were also combination claims, the main elements of which were made and sold by the defendant for use in the complainant's machine. The court held that the manufacture and sale of these devices constituted an infringement of the complainant's patents. It is contended by counsel for the complainant here that the doctrine of this case is applicable to the case now before the court; but it will be found upon examination that the decision in the case just cited is based upon the law as declared by the supreme court in Wilson v. Simpson, supra, where the distinction is drawn between parts of a machine which are of such a temporary character as to require replacement at short intervals, and the more permanent parts which give to the machine its duration and life. It is also pointed out in the Singer Sewing-Machine Case that there is a distinction between a patent covering an entire machine composed of several separate and distinct parts, and a machine not patented as an entirety, but in parts, and such parts covered by different patents. In the former cases the purchaser will not infringe by re-

placing temporary parts as they wear out, so long as the identity of the machine is retained, while in the latter case the manufacture and sale of the parts constitute an infringement. It may be that the distinction here indicated will not satisfactorily determine all cases, particularly where separate parts are protected by separate claims in the patent; but the other distinction, which gives the purchaser of a patented machine under an ordinary sale the right to preserve its normal life by replacing temporary parts when worn out, is a distinction that can be applied in all cases of repair, and is in accordance with the just rights of ownership of the property. Chaffee v. Belting Co., 22 How. 217. Applying the principles of law as thus stated to the present case, I arrive at this conclusion: that, with respect to the can-filling machine which has not been designated by any number, it sufficiently appears that its reconstruction is an infringement of complainant's machine. It has not been merely repaired, but it has been rebuilt. The defendant Pacific Steam Whaling Company has simply taken a set of legs, and placed upon them the entire new mechanism of the patented machine. I do not understand that the defendant has or ever had the right to build a new machine under the patent. The complainant has a title to the patent under which these new machines have been built; and, so far as now appears, the patent is valid. Here is infringement of that patent by the defendants Pacific Steam Whaling Company and the F. A. Robbins Press Works in the reconstruction and rebuilding of this particular machine.

The next question is as to whether it sufficiently appears that complainant will suffer an irreparable damage if the defendant Pacific Steam Whaling Company is permitted to use this machine. It is very earnestly contended on behalf of that defendant that the corporation is entirely responsible, that the machine is necessary to enable it to carry on the work of can-filling in its canning and packing business, and that the complainant will not suffer any damage if defendant is permitted to use the said machine. On the other hand, the complainant has stated in its bill that it will suffer such damage, and the affidavits on its behalf state facts which support the allegation. The complainant states that it does not manufacture these machines, and does not propose to manufacture them, nor does it sell them or the right to manufacture or sell the machines; preferring to appropriate its ownership of the patent in the exclusive use of the machine. I think the complainant is entitled to be protected in that ownership and in that right, and that no one should be permitted to build machines, under the patent, in accordance with the specifications and claims of the patent, unless he does so by permission of the complainant. I am therefore of the opinion that this machine which is not designated by a number is an infringement, and that the complainant is entitled to an injunction against the defendants with respect to this particular machine. I think, however, that the defendants should be allowed to take the machine apart and restore the old mechanism; but, in view of the statement of complainant, that the new parts of the

machine, aside from the legs, might be shipped to Alaska and used to the injury of the complainant, some disposition should be made of those new parts that would secure complainant against their use hereafter to its injury or damage.

With respect to machines numbered 69 and 70, the facts presented to the court are, I think, sufficient to show that the machines are being repaired in accordance with the rules of law established with respect to that privilege. It is contended on the part of the complainant that in repairing these machines, as well as in repairing machine numbered 108, the mechanism of claims Nos. 16 and 17 of the patent has been infringed; and that, as these claims amount to a separate patent for the mechanism therein described, the complainant is entitled to be protected against the repair of any of the machines by the replacing of the mechanism described in said claims. In other words, the contention of the complainant is that, while the defendants may repair the machines by introducing new cams, pistons, rods, knives, and forks, and other ordinary mech-· anism of that character, they have not the right to introduce a new spout, which is the subject of claim No. 16 of the patent; that by repairing the machine by the introduction of a new spout, together with the bolt or slide G and mechanism to move the bolt beneath the spout, those elements are protected by the claims of the patent, and constitute an infringement. There may be something in such a claim, but I am not prepared to go into the merits of that question at this time. It appears, however, that this spout is a temporary or perishable piece of mechanism, that it has not the lasting qualities found in the other parts of the machine, and that when the machine is in operation the spout wears out very quickly. From the examination I made of the machine this morning, I arrived at the conclusion that the spout was more liable to injury and destruction in its working than perhaps any other part of the machine. It does not seem to me to be equitable for the complainant to insist upon an injunction against the repair of the spout, under the circumstances. But I am not called upon now to render a final decision upon this question. I simply determine, upon the present showing, that I will not grant an injunction against repairs of this character. I am of opinion that the defendant Pacific Steam Whaling Company should give the complainant whatever security it desires for the payment of whatever damages may ultimately be determined to have been suffered by the complainant, if it should be determined upon the final hearing that the defendant was not entitled to make the repairs under the law. It may be that, upon a final determination of the case, the court will conclude that the repairing of this spout mechanism, or the introduction of the new spout in connection therewith, constituted an infringement of complainant's patent; and that complainant would be entitled to damages for the use of such machine.

My conclusion is that a preliminary injunction should issue, restraining defendants from the use of the machine without a number, which has been rebuilt; and that the restraining order will

be dissolved, and a preliminary injunction refused, so far as it is proposed to place upon the machines numbered 69, 70, and 108 the ordinary repairs. I will fix the amount of the bond to be given by the defendants at $25,000, and the bond to be given by the complainant at $10,000.

Mr. Wheaton: There is one other thing in regard to this motion, if your honor please. If the defendant Whaling Company wants to have the old parts of the unnumbered machine put back upon the legs, I understand from the court that they have a right to do so, and use the machine in that way.

The Court: Yes.

Mr. Wheaton: But that they have no right to put the new parts back.

The Court: No. They will be permitted to do with that machine just what has been done with the others,—make only ordinary repairs.

Mr. Miller: I understand that the old parts have been thrown away, that the cams were broken and out of order, and the spout was of no account and thrown away, the forks were broken, and the knives, and all that sort of thing; and that therefore they threw the old parts away.

The Court: What do you propose to do with that machine, Mr. Wheaton?

Mr. Wheaton: To repair it; put the old parts back, and repair it just as we have the others.

The Court: That is, put in a new spout and a new fork?

Mr. Wheaton: Just put it in order, the same as we have the others. I will ask Capt. Humphrey whether it is a fact that those old parts have been thrown away, as Mr. Miller suggests.

Mr. Humphrey: They have not. Mr. Robbins has them all.

The Court: Let an order be entered in accordance with this opinion.